UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| GEORGE ELI BROWN, | ) |
| Movant, | ) |
| v. | ) No. 1:18-CV-268 RLW |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Movant George Eli Brown's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 1), that set forth three grounds for relief. The United States a Response in opposition and motion to dismiss (ECF No. 3). Movant then filed a Supplement to Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 6) "in relation to Ground Three of the motion." Id. at 1. The United States filed a Response in opposition to the Supplement (ECF No. 7). Movant filed a Reply (ECF No. 8). This matter is fully briefed and ready for decision. For the following reasons, Movant's Motion will be denied.

**I. Procedural Background**

Movant Brown was indicted on May 21, 2015, by a federal Grand Jury for the Eastern District of Missouri sitting in Cape Girardeau, Missouri, and charged with one count each of Possession with Intent to Distribute of Methamphetamine and Possession with Intent to Distribute Cocaine Base, both in violation 21 U.S.C. § 841(a)(1). United States v. George Eli Brown, No. 1:15-CR-63 RLW (E.D. Mo.) (ECF No. 1). Brown asked to represent himself at his initial appearance. The Magistrate Judge granted the request and appointed the Federal Public Defender as standby counsel. (ECF No. 6)

A petition to revoke Brown's supervised release term from an earlier federal case was filed on March 18, 2015, based on the same conduct that led to Brown's indictment in Case No. 1:15-CR-63 RLW.  See United States v. George E. Brown, No. 1:05-CR-178 RLW (E.D. Mo.) (ECF Nos. 233, 236).

Brown actively defended himself in Case No. 1:15-CR-63 RLW and filed several pro se motions in including a motion to suppress evidence (ECF Nos. 90, 91),[1] and motions to compel disclosure (ECF Nos. 96, 99, 106, 109).  United States Magistrate Judge Shirley P. Mensah held an evidentiary hearing on February 19, 2016, at which Brown represented himself and cross-examined the government's four witnesses. (ECF Nos. 102, 110).  Brown and the United States filed post-hearing briefs. (ECF Nos. 116, 115, respectively).  Judge Mensah issued a Report and Recommendation on March 31, 2016, which recommended the denial of Brown's motion to suppress and motions for disclosure.

Brown filed an objection and supplemental objections to the Report and Recommendation (ECF Nos. 119, 120).  Brown also filed "Defendant's Final Supplemental Objections to the Magistrate's Report and Recommendation" (ECF No. 123), "Defendant's Reply to Government's Response to Defendant's Written Objections to the Magistrate's Report and Recommendation" (ECF No. 124), "Supplemental Reply to Government's Response to Defendant's Written Objections to the Magistrate's Report and Recommendation" (ECF No. 125), "Final Supplemental Reply to Governments' Response to Defendants' Written Objections to the Magistrate's Report and Recommendation" (ECF No. 126), "Defendant's Supplement to Supplemental Reply to Governments' Response to Defendants' Written Objections to the Magistrate's Report and

---

[1] Brown's motion to suppress consisted of forty-nine handwritten pages, supplemented by exhibits. (ECF No. 90).  Brown subsequently supplemented this motion.  (ECF No. 91).

Recommendation" (ECF No. 127), "Exhibit H" in support of the motion to suppress (ECF No. 128), and "Affidavit of George E. Brown" in support of his motion to suppress (ECF No. 129).

After de novo review, this Court adopted the Magistrate Judge's Report and Recommendation on May 26, 2016 (ECF No. 131). Brown filed a motion to reconsider (ECF No. 139) and a supplement thereto (ECF No. 141), which the Court denied on July 25, 2016. (ECF No. 149).

On August 4, 2016, Brown entered into a written conditional guilty plea agreement. Brown pleaded guilty to both counts in the indictment but preserved his right to appeal the denial of his motions to suppress evidence (ECF No. 152 at 5-6). Brown waived his right to appeal all sentencing issues other than criminal history, provided the Court accepted the plea and the agreed-upon Sentencing Guidelines Total Offense Level, and sentenced Brown within or below the guidelines range. (Id. at 6). Brown agreed that the Base Offense Level was 22, based on the marijuana equivalency of the amounts of drugs seized during the investigation. (Id. at 4). As part of the factual basis for the plea, Brown agreed that the amount of drugs involved consisted of "a total of 14.89 grams of a mixture or substance containing methamphetamine, 14.77 grams of cocaine base and 37.93 grams of marijuana." (Id. at 3).

Before accepting Brown's plea, the District Court placed him under oath and engaged in a colloquy with Brown, asking him questions to determine if Brown was entering a plea of guilty freely and voluntarily, and if he was competent to do so. The Court inquired about Brown's level of education, if he was under the care of a physician or psychiatrist, and if he was taking medication that affected his ability to understand what was going on in court. (Plea Tr. at 3-4, ECF No. 175, Case No. 1:15-CR-63 RLW). The Court stated the charges against Brown, and identified the rights Brown would waive by entering a plea of guilty, specifically: the right to plead not guilty and stand trial, that he would be presumed innocent, that the government would have the burden of proof,

3

the right to present witnesses, the right to testify on his own behalf, and that if he chose not to testify there could be no suggestion or inference made that he was guilty because he did not take the stand. (Plea Tr. at 4-7). The Court also inquired if anyone had threatened or in any way forced Brown to plead guilty, if he had signed and read the written plea stipulation, if he understood and agreed with everything in it, and if there were any other agreements that were not written down in the plea agreement. (Plea Tr. at 7-8). The Court found that Brown was competent, knew his rights, and entered the plea voluntarily. (Plea Tr. at. 19-20).

The Presentence Investigation Report ("PSR") prepared in Brown's case recommended that the base offense level was 22 in accordance with the parties' stipulation at the time of the plea, based on drug quantities of "14.77 grams of cocaine base, 14.89 grams of methamphetamine, and 37.93 grams of marijuana, which have a combined marijuana equivalency of 82.56 kilograms, results in a base offense level of 22. USSG § 2D1.1(c)(9)." (ECF 158, ¶ 22, Case No. 1:15-CR-63 RLW).

The PSR also recommended that the Total Offense Level was 19 and the advisory sentencing guidelines range was 63-78 months. (Id. ¶¶ 31, 88). Brown filed an objection to the PSR alleging, among other things, that the drug quantity to which he had agreed was improperly calculated. (ECF 156 at 1-2, Case No. 1:15-CR-63 RLW). At sentencing on November 2, 2016, the Court denied Brown's objection and found that the guidelines calculations, which squared with the parties' calculations in the plea stipulation, were correct. (Sent. Tr. at 12, ECF No. 176, Case No. 1:15-CR-63 RLW). The Court sentenced Brown to a term of 70 months' incarceration on each count, to be served concurrently, which was within the advisory sentencing guidelines range of 63-78 months. (ECF 162, Case No. 1:15-CR-63 RLW).

After the Court sentenced Brown for the new offenses, it took up the Petition to Revoke Supervised Release in Case No. 1:05-CR-178 RLW. Brown stated that he had read the petition to

4

revoke his supervised release and the Court advised him of his right to have a hearing on the petition. (Sup. Rel. Rev. Hrg. Tr. at 3-4 (ECF No. 269), Case No. 1:05-CR-178 RLW). Brown waived his right to a hearing but objected to the advisory Sentencing Guidelines range, on the basis that he was not under supervision for a "Class A" felony. (Id. at 4). The Court heard Brown's argument in support of this objection but overruled it. (Id. at 5-6). The Court sentenced Brown to 60 months' incarceration on the revocation, consecutive to the new offense. (Id. at 9).

Brown filed a notice of appeal in both cases. In his appeal of the conviction in the new criminal case, Brown challenged the Court's denial of his motion to suppress evidence discovered as a result of a traffic stop, and the drug-quantity findings used for sentencing. United States v. Brown, No. 16-4130 (8th Cir.). In the supervised release revocation case appeal, Brown argued the sentence was in excess of that allowed by law. United States v. Brown, No. 16-2160 (8th Cir.).

The Eighth Circuit Court of Appeals consolidated Brown's appeal in the two cases. The Eighth Circuit affirmed the denial of Brown's motion to suppress and enforced the appeal waiver in Brown's plea agreement as it related to the sentencing issue. United States v. Brown, 710 F. App'x 722, 723 (8th Cir. 2018) (unpublished per curiam). The Eighth Circuit also upheld the sentence on the supervised release violation, concluding that Brown's sentence did not exceed the statutory maximum. Id.

Brown filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on October 3, 2018. (ECF No. 200, Case No. 1:15-CR-63 RLW). Brown then timely filed the instant motion to vacate the sentence pursuant to 28 U.S.C. § 2255.

Brown asserts the following grounds for relief:

Ground One: Brown's guilty plea was involuntary and coerced as a result of mental and physical effects caused by the conditions of confinement and lack of medical care he was subjected to between the time of his arrest and the time of his guilty plea. (ECF No. 1 at 4, 9-12).

5

<u>Ground Two</u>:  Brown's waiver in the guilty plea agreement of his rights to appeal and to file post-conviction motions was involuntary and coerced as a result of mental and physical effects caused by the conditions of confinement and lack of medical care he was subjected to between the time of his arrest and the time of his guilty plea.  (ECF No. 1 at 5, 13-16).

<u>Ground Three</u>:  "Jurisdictional defect – sentenced to more than that authorized by law." (ECF No. 1 at 7.)  Brown states his original sentence in Case No. 1:05-CR-178 RLW was later reduced from 240 months' imprisonment to 144 months under 18 U.S.C. § 3582(c)(2) and the Fair Sentencing Act.  He argues that, as a result, the conviction was reclassified as a Class "C" felony based on the new sentencing range.  (ECF No. 1 at 17-18).[2]  The maximum revocation sentence for a violation of supervised release for a C felony is two years, so the 60-month revocation sentence Brown received was "a jurisdictional defect as it is more than that authorized by law." (<u>Id.</u> at 18.)

## II.  Legal Standard

Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  To warrant relief under § 2255, the errors of which movant complains must amount to a fundamental miscarriage of justice.  <u>Davis v. United States</u>, 417 U.S. 333 (1974); <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962).  The Supreme Court has stated that "a collateral challenge may not do service for an appeal." <u>United States v. Frady</u>, 456 U.S. 152, 165 (1982).

---

[2]Movant also received an interim sentence reduction to 192 months, in Case No. 1:05-CR-178 RLW, pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 706 to the United States Sentencing Guidelines.

"A § 2255 motion 'can be dismissed without a hearing if (1) the [movant]'s allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003) (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)).

**III. Discussion**

A. Grounds One and Two.

Movant's first ground is that his guilty plea was involuntary and coerced as a result of the conditions of arrest, confinement, and transport he details in his Motion, and the lack of medical care for his sleep apnea, PTSD, anxiety disorder, hypertension and other illnesses, that he was subjected to between the time of his arrest and the time of his guilty plea. Movant contends these conditions and the lack of medical treatment rendered it impossible for him to enter a voluntary plea:

> It was impossible for Movant to enter a voluntary plea of guilty while not knowing the full effect of the illnesses had on his body in order to effectively and intelligently understand what was going on around him compounded with the coercive effects of the punitive environment and acts. Movant's plea is without doubt born out of an overly stressed mind and body that is undoubtedly, "INVOLUNTARY AND COERCED."

(ECF No. 1 at 12.)

Movant's second ground is that his waiver in the guilty plea agreement of his rights to appeal and to file post-conviction motions was involuntary as a result of the conditions of his arrest, confinement, and transport, and the lack of medical care he experienced. Movant states:

> Based on the above facts and circumstances Movant's waiver is involuntary and coerced. Had Movant been provided the proper medical attention for his medical and mental issues which caused him to be able to think rationally there is no way he would have given up any rights to appeal or file post-conviction motions as there is likely to be mistakes made during sentencing and plea hearings

(ECF No. 1 at 16).

7

The government responds that the record clearly reflects that Movant's plea of guilty was freely and voluntarily given without coercion, and the plea hearing transcript establishes that Movant was advised of the rights he was giving up, and he knowingly and voluntarily agreed to do so.

It is well established that entry of an unconditional guilty plea waives all challenges to the prosecution of a criminal case, except for those related to jurisdiction.  See United States v. Winheim, 143 F.3d 1116, 1117 (8th Cir. 1998); Smith v. United States, 876 F.2d 655, 657 (8th Cir. 1989).  Collateral review of a guilty plea is therefore "ordinarily confined to whether the underlying plea was both counseled and voluntary."  United States v. Broce, 488 U.S. 563, 569 (1989).

A defendant may affirmatively waive particular constitutional rights.  See Boykin v. Alabama, 395 U.S. 238, 243 (1969) (right to a jury trial, to confront and cross-examine witnesses, and to the Fifth Amendment privilege against self-incrimination); Faretta v. California, 422 U.S. 806, 836 (1975) (right to counsel).  There is no constitutional right to appeal, as the right to appeal is purely a creature of statute.  Abney v. United States, 431 U.S. 651, 656 (1977).  Because defendants can waive fundamental constitutional rights, they are not precluded from waiving procedural rights granted by statute, such as the right to appeal.  United States v. Rutan, 956 F.2d 827, 829 (8th Cir. 1992), overruled in part by United States v. Andis, 333 F.3d 886, 892 n.6 (8th Cir. 2003) (en banc).  Such waivers are not absolute, however.  Defendants cannot waive their right to appeal an illegal sentence or a sentence imposed in violation of the terms of an agreement.  DeRoo v. United States, 223 F.3d 919, 923 (8th Cir. 2000).  Further, "the decision to be bound by the provisions of the plea agreement, including the waiver provisions, must be knowing and voluntary."  Id. (quoted case omitted).

Brown appeared before the Court on August 4, 2016, and expressed a desire to enter a plea of guilty. After acknowledging that Brown was representing himself with standby counsel, the Court engaged in the following colloquy with him:

> Mr. Brown, do you have an announcement regarding your charge here this morning?
>
> THE DEFENDANT: Yes, sir. I'm here to -- for a change of plea.
>
> THE COURT: And does that mean you're going to enter a plea of "guilty" this morning?
>
> THE DEFENDANT: Yes. Those are my intentions.
>
> THE COURT: All right. Before I accept your guilty plea, there are some questions that I must ask of you. And before I ask you those questions, I'm going to have you placed under oath. Once you're sworn to tell the truth, your answers will be subject to penalties of perjury. That means if you're untruthful, you could be prosecuted for that. Do you understand that, Mr. Brown?
>
> THE DEFENDANT: Yes, I do, sir.

(ECF No. 175, Plea Tr. at 2-3.) Defendant was placed under oath and the Court inquired as to his age, education, physical and mental state, and understanding. The purpose of these questions was to establish the voluntariness of his plea:

> QUESTIONS BY THE COURT:
>
> Q Mr. Brown, how far did you go in school?
>
> A I finished high school.
>
> Q How old are you?
>
> A 57.
>
> Q Are you currently under the care of a physician or a psychiatrist?
>
> A I need to be, but I'm not getting all that care; not the care that I need but partially, yes.
>
> Q Is there anything about that treatment that affects your ability to understand what's going on here today?

9

> A No, sir.
>
> Q Are you taking any medicines on a regular basis?
>
> A Yes.
>
> Q Is there anything about those medicines that affects your ability to understand what's happening here today?
>
> A No.
>
> Q Do you understand what's happening here today?
>
> A Yes.
>
> Q And do you understand why you're here?
>
> A Yes.
>
> THE COURT: Does counsel for the Government have any doubts as to the Defendant's competence to enter a plea at this time?
>
> MR. MANTOVANI: I have no doubts personally from standing here and observing Mr. Brown.  Mr. Willis has not also given me any indication that Mr. Brown does not understand what he is doing and what's going on here today.

(Plea Tr. at 3-4).  The Court inquired specifically whether Brown was receiving care from a physician or psychiatrist, and Brown testified equivocally that he was receiving "not the care that I need but partially, yes."  The Court then asked if there was anything about the treatment he was receiving or the medicines he was taking that affected his ability to understand what was happening at the hearing, and Brown denied that this affected his ability to understand. Brown affirmatively asserted that he understood what was happening and why he was there.  Brown's assertions in his § 2255 Motion are not sufficient to overcome his persuasive, sworn testimony at the plea hearing.

The Court then read the charges against Brown from the Indictment and inquired if he understood the charges, and if he understood the trial rights he would be giving up by entering a plea of guilty:

> Do you understand the charges against you, sir?

A Yes.

Q Do you understand that these are felony charges?

A Yes.

Q And do you understand that you have a right to be represented by a counsel, if you so choose?

A Yes.

Q All right. You're here today pro se with Mr. Michael Skrien as stand-by counsel. Did you have an opportunity to discuss your case with him or you did it by yourself?

A Yes.

Q Okay.

A We've spoken all along.

Q I need to talk to you now about your trial rights. Do you understand you have a right to plead "not guilty"?

A Yes.

Q You have a right to plead "not guilty" and go to trial.  Do you understand that?

A Yes.

Q If you plead "guilty," you'll be giving up your right to trial and some other rights, and I just want to make sure you understand what you're giving up by pleading "guilty." Do you understand that if you pleaded "not guilty," you would be entitled to a speedy and public trial by a judge or by a jury?

A Yes.

Q At that trial you would be presumed innocent, and the Government would have to try to prove you guilty by competent evidence and beyond a reasonable doubt. Do you understand that?

A Yes.

Q You would not have to prove you're innocent. The burden would always be on the Government to try to prove otherwise. The Government would try to do that by bringing in witnesses who would testify in your presence. In other words, you would hear what the witnesses had to say against you. You or your attorney could then cross-examine the Government's witnesses, could object to the Government's

11

> evidence, and could offer evidence and subpoena witnesses on your behalf. Do you understand that?
>
> A Yes.
>
> Q You could testify, if you wanted to, but you do not have to testify. And if you decided not to testify, there could not be any suggestion made to the jury or any inference drawn by them that you were guilty because you didn't take the stand. Do you understand that?
> A Yes.
>
> Q Do you understand that those are some of the rights you would have if you pleaded "not guilty" and went to trial?
>
> A Yes.
>
> Q If you plead "guilty" and I accept your plea, you'll be giving up the right to trial and the other rights I've just described. In other words, there won't be any trial and judgment of guilty will be entered against you just the same as if you had been convicted by a jury. Do you understand that?
>
> A Yes.
>
> Q Has anyone threatened you or in any way forced you to plead "guilty" here today?
>
> A No.

(Plea Tr. at 5-7.)  Brown stated under oath that he understood the charges, he understood the numerous trial rights he was giving up, and he had not been threatened or in any way forced to plead guilty.  "Such statements at the plea hearing provide persuasive evidence of an understanding." Harvey v. United States, 850 F.2d 388, 396 (8th Cir. 1988).

The Court then asked Brown a number of questions concerning whether he signed and understood the guilty plea agreement:

> The lawyers have given me a document that is called the "Guilty Plea Agreement." It has your name in the caption. Do you have a copy of it in front of you?
>
> A Yes.
>
> Q I'm going to ask [standby counsel] Mr. Skrien to turn the pages for you since your hands are secured so that you can go through this with me. I want you to take a look at the last page which is Page 10. There are two signatures there. At the top is the signature of Mr. John Mantovani for Tim Willis, and below that there's the

12

> signature line that has your name typed. Is your -- Is that your signature, Mr. Brown?
>
> A Yes.
>
> Q Did you sign this document here today?
>
> A Yes.
>
> Q Did you read it and discuss it with anyone before you signed it?
>
> A Yes.
>
> Q Is everything in it true to the best of your knowledge and understanding?
>
> A Yes, I agree with it.
>
> Q Is there anything you disagree with or don't understand?
>
> A I'm in agreement.
>
> Q Okay. Has there been any promises made to you or other agreements entered into by you related to this guilty plea that aren't written down here?
>
> A Actually there was. Back in October there was an Agreement. Mr. Willis had presented another Agreement in relation to the offense level. He agreed then it was a 20, but I'm in agreement with what we got here now.
>
> Q All right.

(Plea Tr. at 8-9). Brown's responses to the Court's questions indicate his understanding of and agreement with the terms of the guilty plea agreement. Brown's statement concerning an earlier agreement with a different offense level reflects his ability to recall the plea negotiations and his genuine understanding of the parties' agreement.

The Court then recited the elements of the charges against Brown and asked if he understood them. Brown responded, "Yes." (Plea Tr. at 9.) The Court asked the Assistant U.S. Attorney to state what facts the government would prove beyond a reasonable doubt if the case were to go to trial, and asked Mr. Brown to listen carefully. Mr. Mantovani recited the facts the

13

government would prove and the Court asked, "Mr. Brown, did you do those things that were just stated?"  Brown responded, "Yes, I'm in agreement."  (Plea Tr. at 9-11.)

The Court then called Brown's attention to the statutory penalties set forth in the guilty plea agreement, and read the relevant provision of the plea agreement:

> "The Defendant fully understands that the maximum possible penalty provided by law for the crimes to which the Defendant is pleading 'guilty' is imprisonment of not more than 20 years, a fine of not more than a million dollars or both such imprisonment and a fine as to each Count. The Court shall also impose a period of supervised release of at least three years."

(Plea Tr. at 12, quoting Section 5 of the Guilty Plea Agreement).  The Court asked Brown if he understood what the penalties are, and he responded, "Yes."  (Plea Tr. at 12).

The Court explained to Brown that his sentence would also be affected by the Sentencing Guidelines, asked the Assistant U.S. Attorney to outline the plea agreement's analysis of the Guidelines, and asked Brown to listen carefully.  Mr. Mantovani explained the plea agreement's application of the marijuana equivalency tables, the specific offense characteristics, the acceptance of responsibility deduction, and the parties' estimate of a Total Offense Level of 19.  (Plea Tr. at 12-15).  The Court asked Brown if he understood the Total Offense Level estimate, that it "will all be determined before you're sentenced later," and if he basically agreed with how the sentencing guidelines might apply to him, and Brown responded "Yes" to each of these inquiries.  (Plea Tr. at 15.)

The Court then reviewed with Brown the terms of plea agreement's waiver of appeal and post-conviction rights section, and Brown's understanding and acceptance of these waivers:

> Q I want you to look at the bottom of Page 5. It's Section 7, "Waiver of Appeal and Post-Conviction Rights." Part A: "The Defendant has been fully apprised of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.
>
> The parties waive all rights to appeal all nonjurisdictional, nonsentencing issues with the exception of the Court's denial of Defendant's motion -- Motions to Suppress Evidence (Documents 90 and 91), pursuant to Rule 11(a)(2). The

14

>Defendant expressly reserves the right to appeal the denial of those motions by the Court. All other issues, including, but not limited to, others unaddressed in the pretrial motions, discovery and the guilty plea are hereby waived."
>
>Do you understand that, sir?
>
>A Yes.
>
>Q That's preserving your right to appeal the pretrial rulings. Okay?
>
>The second part of that is Section 7(a)(2). It says, "In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines' Total Offense Level agreed to herein and, after determining a Sentencing Guidelines range, sentences the Defendant within or below that range, then as part of the Agreement, the Defendant hereby waives all rights to appeal all sentencing issues other than criminal history. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than criminal history provided the Court accepts the plea, the agreed Total Offense Level, and sentences the Defendant within or above that range."
>
>And, Mr. Brown, basically this says if you receive a sentence within the Guidelines range, then you would waive your right to appeal that sentence, and the Government would waive theirs. Do you understand that, sir?
>
>A Yes.
>
>Q All right. I want you to take a look at Section 7(b) which is also on Page 6. It says that you're giving up your right to file a habeas corpus or a post-conviction motion which is a motion where you could come back to me and say you thought your rights had been violated in these proceedings.  You're giving up that right unless you later find out something you believe is prosecutorial misconduct or ineffective assistance of counsel. Do you understand what you're giving up, sir?
>
>A Yes.
>
>Q These two provisions together, waiver of appeal and waiver of post-conviction rights, they mean that with very few exceptions, when I sentence you in this case, that will be the final word. You will not be able to come back to me or any other court and get that sentence changed. Do you understand that, sir?
>
>A Yes.

(Plea Tr. at 16-18).  The Court explained the plea agreement's provisions concerning appeal and post-conviction motion waivers to Brown in clear and understandable language, and explained the effect of those provisions, and Brown expressed his understanding of these waivers.  Brown's

understanding and agreement with these provisions is underscored by the fact that he sought and obtained the government's agreement that Brown's right to appeal the denial of his motion to suppress would not be waived.

The Court then reviewed the final provisions of the plea agreement including section 10, and stated, "This section says that you're entering this plea voluntarily.  Is that what you're doing, sir?"  Brown answered, "Yes."  (Plea Tr. at 19).  The Court then asked Brown—,

> Q Then, Mr. Brown, let me ask you formally and for the record: How do you plead to the charges set forth in Counts I and II of the Indictment? Guilty or not guilty?
>
> A  Guilty.
>
> THE COURT: Okay. I will accept your plea. I find that you're competent to enter the plea. You know your rights and you're doing this voluntarily. I also find that the plea has a factual basis that contains all of the elements of the crimes to which you're pleading guilty, so I will accept your plea.

(Plea Tr. at 20-21).

"Solemn declarations in open court carry a strong presumption of verity."  Blackledge v. Allison, 431 U.S. 63, 74 (1977).  Brown's statements under oath as reflected in the plea transcript affirmatively demonstrate, under the totality of the circumstances, that Brown's plea was voluntary and knowing.  Brown denied that his physical or mental conditions, medical or psychological treatment, or medications affected his ability to understand what was happening at the change of plea hearing.  Brown did not express any confusion, inability to understand, hesitation, or disagreement with any of the Court's questions or the government's representations as to the matters contained in the plea agreement.  Instead, Brown affirmatively and repeatedly expressed his understanding and agreement with the plea agreement's terms.  This conclusion is also supported by the fact that Brown, who waived his constitutional right to counsel, consistently demonstrated the ability to oppose the government's case and assert and defend his interests throughout the yearlong period of pretrial matters. during which he now claims to have been unable

16

to think rationally and understand the proceedings. In addition, Brown's Presentence Investigation Report reflects that he has been convicted of at least eleven felony offenses, which tends to indicate he is familiar with the criminal justice system. (ECF 158, ¶¶ 34-44, Case No. 1:15-CR-63 RLW).[3]

Brown has not advanced any credible reason why the declarations he made under oath at his change of plea hearing should not be accepted as true. Brown's allegations that his plea of guilty was involuntary or coerced, and that his waiver of certain appeal and habeas corpus rights in the guilty plea agreement was involuntary or coerced, are refuted by the record of the guilty plea hearing. As such, no evidentiary hearing is required on these grounds. See Sanders, 341 F.3d at 722 (evidentiary hearing not required where the movant's allegations cannot be accepted as true because they are contradicted by the record); United States v. Degand, 614 F.2d 176, 178-79 (8th Cir. 1980) (evidentiary hearing not required where § 2255 movant made conclusory allegations his plea was involuntary and not made with an understanding of the nature of the charge and the consequences of the plea).

Grounds One and Two will be dismissed.

B. Ground Three.

In Ground Three, as supplemented, Brown asserts that the 60-month sentence he received for violating his supervised release conditions in Case No. 1:05-CR-178 RLW was in excess of the maximum allowed by law. Brown asserts that because he was resentenced to a term of 144 months in the case, from the original sentence of 240 months, the crime for which he was sentenced was reclassified as a Class "C" felony for which the maximum term on revocation was twenty-four months. In his supplement (ECF No. 6), Brown cites as further support for Ground Three the

---

[3]Brown also waived his constitutional right to counsel and asserted his right to self-representation in Case No. 1:05-CR-178 RLW. See Motion to Proceed Pro Se (ECF No. 56); Mem. and Order of July 10, 2006 (ECF No 70) (granting Motion to Proceed Pro Se and retaining the Federal Public Defender's Office as backup counsel).

17

passage of § 404 of the First Step Act of 2018, which he states made sections 2 and 3 of the Fair Sentencing Act retroactive.

The government responds that Movant raised Ground Three on his direct appeal, and therefore cannot relitigate it on a subsequent motion under 28 U.S.C. § 2255, citing United States v. Davis, 673 F.3d 849, 852 (8th Cir. 2013), and United States v. Lee, 715 F.3d 215, 224 (8th Cir. 2013). The government further responds that the First Step Act has no impact on Brown's conviction or supervised release revocation sentence because he was sentenced on November 2, 2016, after the effective date of the Fair Sentencing Act, and a defendant who was sentenced under the Fair Sentencing Act is not eligible for a reduction in sentence under Section 404 of the First Step Act.

The Court finds that Brown raised his Ground Three argument on direct appeal. Brown's direct appeal brief before the Eighth Circuit included Point "III. The District Court Clearly Erred in Imposing a Sentence That is More Than That Authorized By Law for the Supervised Release Revocation." United States v. Brown, No. 16-4130, Appellant's Brief at 9. Brown's Summary of Argument shows that Point III was based on the proposition that his underlying offense was a class C felony: "The District Court clearly erred when it sentenced [Brown] to more than that authorized by statute for a supervised release violation where the underlying offense that supervised release was imposed is a class C felony." Id. at 9. Brown explained this argument as follows:

> Under 18 U.S.C. § 3559(a)(3) which was in effect at the time of the revocation proceeding in the case at bar an offense that has a punishment of less than twenty-five years but ten or more years is a **class C felony**. The underlying offense in which caused the supervised release placement is **Possession with Intent to Distribute 5 grams or more of Cocaine Base**. This offense has a maximum punishment of 20 years imprisonment. **United States v. Bone 378 F. 3d 806 (8th Cir. 2004) (24 months maximum allowable time for violation revocation).** In case at bar the district court sentenced Appellant to 60 months imprisonment. The sentence is unreasonable as it is more than that authorized by law pursuant to **18 U.S.C. §§3583(e)(3) and 3559(a)(3)**.

Id. at 18-19 (emphases in original).

18

The Eighth Circuit rejected this argument, stating:

> In the second of these consolidated cases, Brown challenges the length of his revocation sentence, and he argues that the district court improperly denied him counsel at the revocation hearing. As to the length of the revocation sentence, we conclude that Brown's sentence does not exceed the statutory maximum, because his underlying offense was a Class A felony at the time of his original conviction. See 18 U.S.C. § 3583(e)(3); 18 U.S.C. § 3559(a)(1) (2006); 21 U.S.C. § 841(b)(1)(B)(iii) (2006); accord United States v. Johnson, 786 F.3d 241, 245 (2d Cir. 2015); United States v. Turlington, 696 F.3d 425, 427-28 (3d Cir. 2012).

Brown, 710 F. App'x at 723.  "[C]laims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." Thompson v. United States, 872 F.3d 560, 565 (8th Cir. 2017) (quoting Davis, 673 F.3d at 852).

Brown argues he is making a different argument concerning the revocation sentence than he made on direct appeal, specifically that "there was more than just a change in the law but that [Brown] was actually resentenced or sentence modified under the charges in law. The Court of Appeals nor the cases it relied on considered this aspect of the present argument." (ECF No. 1 at 17). Brown could have asserted this new argument at the time of his direct appeal, and the underlying claim is the same. Brown cannot relitigate the claim in Ground Three and it will be dismissed.

Moreover, this ground is moot. After briefing in this matter was completed, the Court granted Brown's pro se and amended motions under 18 U.S.C. § 3582(c) for relief pursuant to Section 404 of the First Step Act and reduced Brown's revocation sentence to thirty-six months, the new statutory maximum, pursuant to the parties' joint recommendation. See Mem. and Order of May 19, 2020 (ECF No. 298), No. 1:05-CR-178 RLW. [4]

---

[4]Contrary to Movant's argument in Ground Three, upon his resentencing the classification of his offense changed from a Class A felony to a Class B felony under 18 U.S.C. § 3559(a)(2), not a Class C felony. As a result of this change, the statutory maximum term of imprisonment upon revocation for the offense was reduced from five years to three years, pursuant to 18 U.S.C. § 3583(e)(3). See Mem. and Order of May 19, 2020 (ECF No. 298 at 2-3), Case No. 1:05-CR-178 RLW.

19

### IV. Conclusion

For the foregoing reasons, the Court concludes that Brown's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence should be denied in all respects.

Accordingly,

**IT IS HEREBY ORDERED** that Movant George E. Brown's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability as to any of the claims raised in Movant's § 2255 Motion.  See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000); Miller-El v. Cockrell, 537 U.S. 322, 342 (2003).

A separate judgment will accompany this Memorandum and Order.

                                                 */s/ Ronnie L. White*
                                                 **RONNIE L. WHITE**
                                                 **UNITED STATES DISTRICT JUDGE**

Dated this 14th day of January, 2022.